**Jerry L. VASSAR, Appellant,**

v.

**Herman SOLEM, Warden, South Dakota State Penitentiary and Mark V. Meierhenry, Attorney General of the State of South Dakota, Appellees.**

No. 84–1368.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 15, 1985.

Decided June 4, 1985.

where such knowledge is essential.

John Schlimgen, Sioux Falls, S.D., for appellant.

John Bastian, Asst. Atty. Gen., Pierre, S.D., for appellees.

Before ROSS and BOWMAN, Circuit Judges, and SCHATZ,* District Judge.

ROSS, Circuit Judge.

Jerry L. Vassar appeals the district court's denial of his petition for a writ of habeas corpus. Vassar, while in the custody of the Sioux Falls, South Dakota Police Department on another matter, agreed to take a polygraph examination regarding a fire which occurred at his girlfriend's home. One person was killed during the fire. After the examination, Vassar was told that his responses indicated he was having difficulty with some of the questions. When asked by the examiner if he would like to talk about it, Vassar confessed to starting the fire. At his trial, his motion to suppress the confession was denied, and Vassar was convicted of arson and murder. His convictions were affirmed on appeal. *State v. Vassar*, 279 N.W.2d 678 (S.D.1979).

Vassar argues on appeal that the trial court erred in: (a) denying his motion to appoint a psychologist to determine his mental competence at the time of his confession; (b) refusing to suppress his confession; (c) refusing to disqualify itself; and (d) denying his motion for a new trial. We affirm.

## I. MENTAL COMPENTENCY

Vassar first argues that the trial court's denial of his motion to appoint an expert

---

* The HONORABLE ALBERT G. SCHATZ, United States District Judge for the District of Nebraska, sitting by designation. Judge Schatz participated in oral argument and the subsequent conference of the three judges. The opinion reached by the judges in conference was unanimous to affirm. Judge Schatz died on April 30, 1985.

for determining his mental capacity at the time he gave his confession denied him his rights to due process, equal protection and effective assistance of counsel. The court held a hearing to determine whether Vassar gave his confession knowingly and voluntarily pursuant to the rule in *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). At the hearing, a licensed psychologist testified that petitioner's I.Q. scores from grade school ranked in the lower seventh percentile. After the hearing, the trial court refused to suppress Vassar's confession and, furthermore, it denied Vassar's motion to appoint a psychologist, stating that Vassar had not been tested for approximately eight years and had not adequately specified reasons why the services were necessary. The court suggested, however, that it might rule in favor of a subsequent motion upon a better showing that such an appointment was necessary.

■ A defendant's request for the use of an expert witness in preparation of his defense must be measured by a standard of reasonableness and should be allowed when the facts reasonably suggest that use of an expert would be beneficial to the accused in preparing his case. *United States v. Schultz*, 431 F.2d 907, 911 (8th Cir.1970); *cf. Ake v. Oklahoma*, — U.S. —, 105 S.Ct. 1087, 1097, 84 L.Ed.2d 53 (1985) ("When the defendant is able to make an *ex parte* threshold showing to the trial court that his sanity is likely to be a significant factor in his defense, the need for the assistance of a psychiatrist is readily apparent.") However, "the extent to which mental competence must be investigated before a confession may be found voluntary is essentially a question for trial court discretion." *United States v. Silva*, 418 F.2d 328, 331 (2d Cir.1969); *see also Williams v. Martin*, 618 F.2d 1021, 1026 (4th Cir.1980). ("The determination of the defendant's need for expert assistance is committed to the sound discretion of the trial judge.")

■ In this case, Vassar's attorney did not supplement his motion as suggested by the trial court. Furthermore, Vassar testified at the *Denno* hearing that he had been given his *Miranda* rights before he confessed, that he understood the rights, that he had not been threatened or coerced into giving his confession, and that he had, on previous occasions, been involved with police procedures. Based on this evidence, the trial court held Vassar's confession admissible and refused to appoint a psychologist. On the facts of this case, we believe the court did not abuse its discretion, and accordingly, Vassar's claim provides no basis for habeas corpus relief. See, e.g., *Corn v. Zant*, 708 F.2d 549, 567 (11th Cir. 1983), *cert. denied*, — U.S. —, 104 S.Ct. 2670, 81 L.Ed.2d 375 (1984); *Knott v. Howard*, 511 F.2d 1060, 1061 (1st Cir.1975) (per curiam).

## II. VOLUNTARINESS OF CONFESSION

■ Vassar next argues that his confession was involuntary and should have been suppressed because he did not knowingly and intelligently waive his constitutional rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Prior to talking with the police, Vassar was informed of his *Miranda* rights and was informed again before taking the polygraph examination. He was not, however, informed of his rights when the examiner discontinued the examination and Vassar gave an oral confession. A written statement was prepared from his oral confession, and he initialed the *Miranda* warnings at the top of his statement. At the suppression hearing, Vassar testified that he had voluntarily consented to the polygraph examination and further, that he had understood the rights which were read to him before the examination began.

Vassar invokes *United States v. Little Bear*, 583 F.2d 411 (8th Cir.1978), in which this court stated that when a polygraph examination is administered to a suspect while under criminal investigation, full instructions of his rights should be furnished. *Id.* at 414. This did take place in this case prior to the examination. Our inquiry into the voluntariness of Vassar's

confession during the test is governed by *Wyrick v. Fields,* 459 U.S. 42, 103 S.Ct. 394, 74 L.Ed.2d 214 (1982) (per curiam). In *Wyrick,* the Supreme Court reversed this court's ruling that *additional Miranda* warnings are required when a polygraph examination has ceased but the suspect is questioned further about the results of the examination. The Court refused to adopt a rule that failure to give additional *Miranda* warnings is a per se violation of a suspect's fifth amendment rights, and applied the language set forth in *Edwards v. Arizona,* 451 U.S. 477, 486 n. 9, 101 S.Ct. 1880, 1885 n. 9, 68 L.Ed.2d 378 (1981)—that the courts must review the totality of the circumstances to determine whether there has been a knowing and intelligent waiver. *Wyrick,* 459 U.S. at 48–49, 103 S.Ct. at 396–397.

In this case, the trial court found that Vassar had knowingly and intelligently waived his fifth and sixth amendment rights during the post-polygraph interrogation, because he initialed the *Miranda* warnings on his written statement, and, more importantly, testified at the hearing that he understood the rights which were read to him before the examination. "Merely disconnecting the polygraph equipment could not remove this knowledge from [Vassar's] mind." *Wyrick,* 459 U.S. at 48, 103 S.Ct. at 396. *See also United States v. Jackson,* 712 F.2d 1283, 1287 (8th Cir.1983) (in applying "the totality of the circumstances" test enunciated in *Wyrick* and upholding a finding that the defendant's confession was voluntary, this court noted that the defendant testified at the suppression hearing that he had been furnished with a form setting out his rights, had read the form and understood it.) *See also United States v. Eagle Elk,* 711 F.2d 80, 83 (8th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984) (this court held that the defendant had knowingly and intelligently waived his right to have counsel present at a post-polygraph interrogation, stating that "[i]t is clear from the record that Eagle Elk fully understood and expressly waived these rights prior to the polygraph examination.")

## III. REFUSAL TO DISQUALIFY

Thirdly, Vassar argues that the trial judge's refusal to disqualify himself denied him his right to a fair trial. Subsequent to Vassar's conviction, the trial judge pled guilty to the charge of petty theft and also admitted to stealing items over a six-year period. Vassar claims the judge suffered from a mental illness that affected his ability to act as a neutral and detached magistrate, and the judge's failure to disqualify himself violated his due process rights.

A similar issue was before this court in *Wabasha v. Solem,* 694 F.2d 155 (8th Cir. 1982). In *Wabasha,* it was discovered that the sentencing judge was suffering from a mental illness at the time he accepted the defendant's plea bargaining agreement and sentenced him. This court refused to hold that the judge's mental illness was a per se constitutional violation and stated further that in habeas corpus proceedings, harm or prejudice must be shown to warrant relief. *Id.* at 159.

Even assuming Vassar could show that the trial judge was mentally ill, Vassar admits there is no specific ruling by the trial judge which prejudiced him. He argues instead that a per se violation should be found in cases where there has been a jury trial, and the judge made rulings on various objections, jury instructions and motions. Vassar's argument is not convincing, and we find *Wabasha* to be definitive on the issue.

## IV. MOTION FOR NEW TRIAL

Finally, Vassar argues that the trial court abused its discretion in refusing to grant him a new trial on the basis that he was prevented from testifying on his own behalf because of threats made to him by the victim's son-in-law. When Vassar told the trial judge of his intention not to testify, an in-chambers conference was held wherein the judge told him of the disadvantages of his decision. He asked Vassar if there was any reason why he was afraid to testify, and Vassar responded that he was afraid of becoming confused on cross-examination.

The denial of a motion for a new trial is within the discretion of the trial court and will not be disturbed on appeal unless there has been an abuse of discretion. *United States v. Wynde*, 579 F.2d 1088, 1097 (8th Cir.), *cert. denied*, 439 U.S. 871, 99 S.Ct. 204, 58 L.Ed.2d 184 (1978). We find no abuse of discretion by the trial court in denying the motion. Even if the allegations were supported by the evidence, Vassar has not shown that his election not to testify prejudiced him in any way, and therefore, it provides no basis for habeas corpus relief. *Brown v. United States*, 610 F.2d 672, 677 (9th Cir.1980).

Accordingly, we affirm the district court's decision to deny Vassar's petition for a writ of habeas corpus.