**STATE of South Dakota, Plaintiff and Appellee,**

v.

**William J. JACOBSON, Defendant and Appellant.**

**No. 17618.**

Supreme Court of South Dakota.

Considered on Briefs March 18, 1992.

Decided Oct. 14, 1992.

**456**

Mark Barnett, Atty. Gen., Jeffrey P. Hallem, Asst. Atty. Gen., Pierre, for plaintiff and appellee.

Thomas J. Deadrick of Zimmer, Duncan & Deadrick, Parker, for defendant and appellant.

SABERS, Justice.

William Jacobson (Jacobson) appeals his conviction for third offense driving under the influence of alcohol (DUI) (SDCL 32–23–1, 32–23–4). We remand for further proceedings.

At approximately 8:00 a.m. on the morning of November 20, 1990, a police officer for the City of Lennox, South Dakota, saw Jacobson's car being driven in an irregular fashion and then saw it proceed through an intersection without stopping at a stop sign. The officer stopped the car and had Jacobson perform a series of field sobriety tests and take a preliminary breath test. Based upon his observations and the results of the tests, the officer arrested Jacobson for DUI. He transported Jacobson to a nearby hospital where blood was drawn for a blood test. He then took Jacobson to the Lincoln County Sheriff's office.

Jacobson was later charged with one count of DUI (SDCL 32–23–1) in an information filed December 20, 1990. A Part II information for third offense DUI (SDCL 32–23–4) was also filed, alleging that Jacobson had prior DUI convictions on July 30, 1987 and September 15, 1990. On March 1, 1991, Jacobson filed a pretrial motion to suppress his blood test results as evidence because the arresting officer did not re-

quest the test for a third DUI but only for DUI and because the officer told him the blood test was mandatory.

Jacobson's motion to suppress was heard on March 5, 1991. The trial court later entered written findings of fact and conclusions of law denying the motion. It found that at the time of Jacobson's arrest, the arresting officer conducted a records check for prior DUI convictions and was advised of the existence of prior DUI offenses; that the officer read Jacobson the implied consent warnings before requesting a blood sample; and, that Jacobson signed the implied consent card but *refused* to give a blood sample. Based on these findings, the trial court concluded the officer had probable cause to believe Jacobson had been previously convicted of more than one DUI and lawfully seized the blood sample after advising Jacobson of his constitutional and statutory rights.

Jacobson renewed his motion to suppress immediately before trial, again contending that the arresting officer did not know it was his third DUI at the time of the withdrawal of blood. In support of his motion, he presented testimony from the Lincoln County Sheriff establishing that the sheriff's radio logs failed to reflect a request for a driver's history on Jacobson on the morning of his arrest. Notwithstanding this evidence, the trial court concluded that the drawing of blood was not a "constitutionally protected entity," and again denied Jacobson's suppression motion.

An in-chambers proceeding was convened after the jury was seated. State presented additional testimony from the arresting of-

ficer to put Jacobson on notice as to what evidence would come in during trial if the "wrong question" was asked. During this proceeding, the officer testified that he read Jacobson the implied consent warnings at the time of the arrest and that Jacobson signed the card and agreed to take the blood test. He also testified that after Jacobson signed the card he mentioned he had been arrested two previous times for DUI. However, the officer did concede that he first saw Jacobson's record when he took him to the sheriff's office *after* blood had been drawn. Nevertheless, the officer denied ever telling Jacobson that he "had" to sign the implied consent warning card. The trial court entered no further findings relative to this testimony, stating it had already ruled on the suppression motion. During this proceeding, the trial court also allowed Jacobson a standing objection to the admission of the blood test results into evidence during trial.

Jacobson's blood test result of 0.33% was admitted during trial. At the close of trial, Jacobson objected to the giving of a jury instruction on the statutory "under the influence presumptions" contained in SDCL 32-23-7.* The objection was overruled and the instruction was given. The jury later returned its verdict finding Jacobson guilty of DUI.

Jacobson subsequently pled not guilty to the Part II information for third offense DUI. Before trial on that charge, Jacobson filed a motion to strike a 1987 judgment alleged in the information, on the ground that the record of the conviction failed to indicate a factual basis for accep-

* SDCL 32-23-7 provides:

In any criminal prosecution for a violation of § 32-23-1 relating to driving a vehicle while under the influence of intoxicating liquor, or a violation of § 22-16-41, the amount of alcohol in the defendant's blood at the time alleged as shown by chemical analysis of the defendant's blood, breath, or other bodily substance shall give rise to the following presumptions:

(1) If there was at that time five hundredths percent or less by weight of alcohol in the defendant's blood, it shall be presumed that the defendant was not under the influence of intoxicating liquor;

(2) If there was at that time in excess of five hundredths percent but less than ten hun-

dredths percent by weight of alcohol in the defendant's blood, such fact shall not give rise to any presumption that the defendant was or was not under the influence of intoxicating liquor, but such fact may be considered with other competent evidence in determining the guilt or innocence of the defendant;

(3) If there was at that time ten hundredths percent or more by weight of alcohol in the defendant's blood, it shall be presumed that the defendant was under the influence of intoxicating liquor.

Percent by weight of alcohol in the blood shall be based upon milligrams of alcohol per 1.0 cubic centimeters of whole blood or 2100 cubic centimeters of deep lung breath.

tance of the guilty plea on which the conviction was based. The motion was decided after trial. Taking judicial notice of the record of the conviction, the trial court concluded the preliminary hearing transcript contained sufficient evidence for the plea-taking court to have found a factual basis for the plea. In addition, the trial court noted the same court had conducted the preliminary hearing and accepted the plea. The trial court found these factors sufficient to show a factual basis existed for entry of the plea and denied Jacobson's motion to strike the prior judgment. A judgment and sentence for third offense DUI were subsequently entered and this appeal followed.

## ISSUE ONE

WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN ADMITTING JACOBSON'S BLOOD TEST RESULTS INTO EVIDENCE?

■ "In making evidentiary rulings, the trial court has broad discretion. [Appellant] must show an abuse of discretion to reverse the trial court's ruling." *State v. Bennis*, 457 N.W.2d 843, 846 (S.D.1990). Here, Jacobson argues that because he refused the blood test and the arresting officer did not know the arrest was for his third DUI, the trial court abused its discretion in admitting the results of the forced blood test into evidence.

SDCL 32–23–10 provides:

Any person who operates any vehicle in this state is considered to have given his consent to the withdrawal of blood or other bodily substance and chemical analysis of his blood, breath or other bodily substance to determine the amount of alcohol in his blood and to determine the presence of marijuana or any controlled drug or substance.

The person shall be requested by the officer to submit to the withdrawal of blood or other bodily substance for chemical analysis or chemical analysis of his breath and shall be advised by the officer that:

(1) If he refuses to submit to the withdrawal or chemical analysis, no withdrawal or chemical analysis may be required *unless he has been arrested for a third, fourth or subsequent violation of § 32–23–1, constituting a felony offense under § 32–23–4 or § 32–23–4.6;*

(2) If he refuses to submit to the withdrawal or chemical analysis, his driver's license shall be revoked for one year, unless pursuant to § 32–23–11.1 he pleads guilty to a violation of § 32–23–1 prior to a revocation order being issued; and

(3) He has the right to have a chemical analysis performed by a technician of his own choosing at his own expense, in addition to the test requested by the officer. (emphasis added).

We have recognized that "SDCL 32–23–10 ... eliminate[s] the right of a third offense DUI suspect to refuse a blood test, under the implied consent law." *State v. Lanier*, 452 N.W.2d 144, 145 n. 2 (S.D.1990).

■ Under SDCL 32–23–10, the predicates for admission of the results of a forced blood test are simple. "Once an individual has been convicted twice for a violation of SDCL 32–23–1 [DUI], a trooper is only required to inform an arrested person of the warnings outlined in SDCL 32–23–10, and the result of a compulsory blood alcohol test is admissible." *State v. Heinrich*, 449 N.W.2d 25, 27 (S.D.1989). State submits that the requirements of *Heinrich* were complied with in this case, i.e., that Jacobson had been convicted twice for DUI and that the arresting officer advised him of the warnings outlined in SDCL 32–23–10. Therefore, State argues that the blood test results were properly admitted into evidence under *Heinrich*, and that the arresting officer's lack of knowledge of Jacobson's prior DUIs was irrelevant. We disagree.

State ignores significant language in *Heinrich*. *Heinrich* contains a detailed discussion of an officer's initial determination of whether an individual is being arrested for a third DUI and whether that determination is an exercise of unreviewable judicial power. Although that issue is

not involved in this appeal, the following language within that discussion is notable:

> The trooper is merely making a preliminary determination as to whether an individual is entitled to the statutory grant of the *right* to refuse to submit to a blood alcohol test. This determination is simply a preliminary judgment *necessary to enforce the statute.*

*Heinrich,* 449 N.W.2d at 27 (emphasis added).

It is clear from the above language that in order to enforce the implied consent law in SDCL 32–23–10 it is "necessary" (*id.*) for a law enforcement officer to make a preliminary determination as to whether an individual is entitled to the statutory grant of the right to refuse to submit to a blood test. An officer can only do that by taking steps prior to administration of a forced blood test to confirm whether an individual has a history of DUI convictions sufficient for forfeiture of his statutory right of refusal. As Jacobson submits, absent such a preliminary determination, every driver in South Dakota is subject to administration of a blood test with only a subsequent judicial remedy available to protect his statutory right of refusal (already violated). Clearly that could not have been the legislature's intention in enacting the implied consent law. Thus, we hold that an initial determination by a law enforcement officer that an individual is being arrested for his third or a subsequent DUI offense is a necessary component of the implied consent law in SDCL 32–23–10.

■ Here, although the officer testified that Jacobson admitted he had two prior DUI convictions, there is no record finding of fact relating to that testimony. Further, the credibility of the testimony is clearly in question, given the inconsistent versions of the arrest testified to by the officer during the trial court proceedings. Therefore, we remand this matter to the trial court for a determination, on the present record, of the factual question of whether the arresting officer had information prior to administration of Jacobson's blood test that the arrest was for his third DUI offense. *See, State v. Holiday,* 335

N.W.2d 332 (S.D.1983); *State v. Stumes,* 90 S.D. 382, 241 N.W.2d 587 (1976). If he did not, a new trial is required and the penalties for law enforcement noncompliance with the implied consent law should be imposed, i.e., loss of State's right to revoke Jacobson's driver's license for his refusal of the blood test and State's forfeiture of the statutory "under the influence presumptions" in SDCL 32–23–7. *See, State v. Parker,* 444 N.W.2d 42 (S.D.1989).

This disposition also resolves Jacobson's contentions concerning the giving of the jury instruction on the under the influence presumptions in SDCL 32–23–7.

## ISSUE TWO

**WHETHER THE TRIAL COURT ERRED IN ALLOWING USE OF AN INVALID, PRIOR DUI CONVICTION TO SUSTAIN JACOBSON'S CONVICTION FOR THIRD OFFENSE DUI?**

Jacobson argues that a facially invalid, prior DUI conviction was used to sustain his conviction for third offense DUI. He bases his argument on the contention that the record of his DUI conviction of July 30, 1987, fails to reflect that the plea-taking court established a factual basis for acceptance of the guilty plea on which the conviction was based.

We find this argument resolved by our holding in *Gregory v. State,* 325 N.W.2d 297 (S.D.1982). In *Gregory,* a habeas corpus petitioner appealed the denial of his petition for post-conviction relief on the grounds that no factual basis for the guilty plea on which the conviction was based had been established on the record. We held:

> [*Spirit Track v. State,* 272 N.W.2d 803 (S.D.1978) ] makes it clear that the factual basis required by SDCL 23A–7–2 and SDCL 23A–7–14 must be established on the record. This can be done by questioning the defendant or by admitting transcripts of testimony, oral testimony, other sworn statements, or tangible evidence. *Here the plea-taking judge did not formally make the joint preliminary hearing transcript part of the record, however it was then part of the*

case file of which the court had judicial notice as fully as though introduced in evidence. A fair reading of the plea-taking court's comments indicates the preliminary hearing transcript was noticed for the factual basis, which it clearly and fully established. In *State v. VanEgdom*, 292 N.W.2d 586 (S.D.1980), we said that where the court had substantially complied with SDCL ch. 23A–7 no prejudicial error would be found. We accordingly conclude that, in respect to the factual basis, the court substantially complied with SDCL ch. 23A–7.

*Gregory,* 325 N.W.2d at 298–99 (citations and footnotes omitted) (emphasis added).

▉▉ Here, State made a prima facie showing as to the validity of Jacobson's 1987 DUI conviction by submitting a record of the conviction establishing that Jacobson entered his guilty plea personally, in open court, with the assistance of counsel and after having been fully advised of all his constitutional rights. The record also contains a preliminary hearing transcript outlining more than sufficient facts to establish the existence of a factual basis for Jacobson's plea. It is true that there is nothing in the record of the conviction showing that the plea-taking judge formally made the preliminary hearing transcript part of the record of the conviction. However, *Gregory* requires rejection of any contention that the preliminary hearing transcript was not part of the case file of which the plea-taking court had judicial notice. Although, in contrast with *Gregory,* there is nothing in the record showing that the plea-taking court formally noticed the preliminary hearing transcript as establishing the factual basis, the record does reflect that the plea-taking judge himself had conducted the preliminary hearing and, therefore, had knowledge of the underlying facts. *See, Willbright v. Smith*, 745 F.2d 779 (2d Cir.1984) (factual basis inquiry not mandated in order to sustain guilty plea where plea was entered voluntarily, in open court, with the assistance of counsel, and judge who accepted plea had himself conducted co-defendants' trials and, thus, had knowledge of the underlying facts). *See also Paulson v. Black*, 728 F.2d 1164 (8th Cir.1984) (factual basis supported by plea-taking court's access to preliminary hearing transcript).

Jacobson relies on *Carreon v. United States,* 578 F.2d 176 (7th Cir.1978), to support his argument on the invalidity of his 1987 conviction. In *Carreon,* the defendant, who could not speak English, attempted to enter a guilty plea before a judge who rejected the plea because of the existence of a possible entrapment defense. The next day, the defendant was permitted to enter his guilty plea before a different judge who failed to conduct a factual basis inquiry. Under these circumstances, the Seventh Circuit allowed the defendant's subsequent collateral attack on the validity of the conviction determining that the failure to conduct a factual basis inquiry constituted a " 'fundamental defect which inherently results in a complete miscarriage of justice.' " *Id.,* 578 F.2d at 179 (citation omitted). The Seventh Circuit has subsequently interpreted *Carreon* to mean that in a collateral attack "a conviction will be vacated for a Rule 11 violation only if it amounts to 'a fundamental defect which inherently results in a complete miscarriage of justice.' " *United States v. Fels,* 599 F.2d 142, 149 n. 5 (7th Cir.1979) (quoting, *Carreon, supra*). This is consistent with the Eighth Circuit Court of Appeals' view that "[e]stablishment of a factual basis *may* be constitutionally required when the guilty plea is accompanied by claims of innocence." *Wabasha v. Solem,* 694 F.2d 155, 157 (8th Cir.1982) (emphasis added).

▉▉ In this instance, none of the offending circumstances of the sort outlined in *Carreon* or *Wabasha* appear in the record of Jacobson's 1987 DUI conviction. There is no indication of any misunderstanding by Jacobson in entry of the plea nor is there any indication that Jacobson's plea was accompanied with claims of innocence. Even more telling is the fact that Jacobson has raised no contention of any misunderstanding in his entry of the 1987 plea. Therefore, we hold that the lack of a factual basis inquiry in the record of the 1987 conviction does not rise to the level of a

miscarriage of justice allowing this collateral attack on the validity of the conviction.

Remanded with instructions.

MILLER, C. J., and AMUNDSON, J., concur.

WUEST, J., concurring in result.

HENDERSON, J., specially concurring in part and dissenting in part.

WUEST, Justice (concurring in result).

Without citing any authority, the majority directs the trial court to determine "on the present record" the factual question of whether the arresting officer knew the arrest was for a third offense when he ordered the blood test. Why should we direct determination on the present record?

If trial courts are to render justice, they must be able to search out the truth without interference by this court. If the state or defense has discovered "a smoking gun" why should either be precluded from presenting it? Our objective should be the truth, rather than the handcuffing of the trial judge. Otherwise, I agree with the majority.

HENDERSON, Justice (specially concurring in part; dissenting in part).

State should be, and must be, and is, as a party to this litigation, bound by its own testimony. This Court has repeatedly held that a party cannot claim the benefit of the facts—more favorable—than given in testimony. *Waddell v. Dewey County Bank*, 471 N.W.2d 591 (S.D.1991); *Lalley v. Safway Steel Scaffolds, Inc.*, 364 N.W.2d 139 (S.D.1985); *Myers v. Lennox Co-op Assn.*, 307 N.W.2d 863 (S.D.1981); *Swee v. Myrl & Roy's Paving, Inc.*, 283 N.W.2d 570 (S.D. 1979); *Miller v. Stevens*, 63 S.D. 10, 256 N.W. 152 (1934).

In a criminal case, the burden of proof rests upon the prosecution at every stage of the trial. *State v. Wilcox*, 48 S.D. 289, 204 N.W. 369 (1925); *State v. Reddington*, 80 S.D. 390, 125 N.W.2d 58, 61 (1964). State's witnesses, at best, gave conflicting evidence. It is clear from Officer Fryer's testimony and the testimony of Sheriff Albers that, at the time Officer Fryer arrested Jacobson, he did not know that Jacobson had two prior DUI convictions within the prior five years. Officer Fryer simply did not know that this very well could be a third DUI offense. Sheriff Albers' testimony, as I understand it, established that Officer Fryer definitely was under the impression that he was arresting Jacobson for a first offense DUI at the time he commandeered Jacobson to the Sheriff's office. To establish this point, Officer Fryer testified that *he first saw Jacobson's arrest record after the blood was drawn.* State is trying to pin its case on a statement that Jacobson made; oral statements are not indicia—not proof—of convictions. Indeed, I agree with the majority opinion that State has not read *Heinrich* correctly. Further, as a trial lawyer many moons ago, it seemed I could try a case in the office, then another one in the Court Room, and as I wended my weary body homeward, yet a third one (the one which I wished I would have tried). With this evidence so hard against the State, I highly disapprove of the Circuit Judge reviewing this case on the record to possibly enter a Finding of Fact (yes, even on the present record) to now permit the State to possibly "save" its case. As far as I am concerned, this case is tried and over. State tried its case and should not be able to try the case again. Sending this case back to the trial court is marching the troops up the hill—to march them down again. The evidence simply does not justify that the arresting officer had information, prior to the administration of Jacobson's blood test that the arrest was for this third DUI. I specially concur to say that I agree with the majority's treatment of Issue Two. Rather than remanding this case, I would simply reverse.

As for the dissenting aspect of this writing, I refer the inquisitive reader to my dissent in *Heinrich* at 28. As I previously wrote, "Our State Legislature has placed an unconstitutional quirk in the Implied Consent Law."