**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Ronald Gene TUCKER, Defendant and Appellant.**

**No. 18831.**

Supreme Court of South Dakota.

Considered on Briefs March 23, 1995.

Decided June 14, 1995.

Mark Barnett, Atty. Gen., Todd A. Love, Asst. Atty. Gen., Pierre, for plaintiff and appellee.

Timothy W. Bjorkman, Bridgewater, for defendant and appellant.

PER CURIAM.

Ronald Gene Tucker (Tucker) appeals a judgment of conviction for two counts of vehicular homicide, one count of driving while under the influence of an alcoholic beverage and one count of driving with a suspended license. We affirm.

## FACTS

On August 13, 1993, Tucker was involved in an automobile accident on highway 262 near Bridgewater, South Dakota. Two motorcyclists were killed as a result of the accident. During law enforcement's investigation at the accident scene, Tucker exhibited various indications of intoxication and refused to perform any field sobriety tests. Ultimately, he was placed under arrest for vehicular homicide. After the arrest, the arresting officer informed Tucker, in writing [1], that he would be required to submit to a blood test to determine the level of alcohol in his blood. However, because the arrest was for vehicular homicide and not driving while under the influence of alcohol, the officer did not, at any time, read or otherwise inform Tucker of the implied consent warnings contained in SDCL 32–23–10.[2] Tucker

was subsequently transported to the McCook County Courthouse and two samples of his blood were withdrawn for blood/alcohol testing.

On October 4, 1993, state filed an information charging Tucker with: two counts of vehicular homicide (SDCL 22–16–41); one count of driving with 0.10 percent or more by weight of alcohol in his blood (SDCL 32–23–1(1)); an alternative count of driving while under the influence of an alcoholic beverage (SDCL 32–23–1(2)); and, one count of driving with a suspended license (SDCL 32–12–65(2)). On January 3, 1994, Tucker filed a set of pretrial motions including a motion to exclude the results of the blood tests conducted on the samples of his blood. Tucker contended that because the arresting officer did not inform him of his statutory right to refuse the blood test, the test results should be excluded from his trial. The motion was denied during a pretrial motions hearing on January 14, 1994. However, the trial court did rule that, as a result of the law enforcement officer's noncompliance with the implied consent law, state would be required to forfeit the benefit of the statutory presumptions contained in SDCL 32–23–7.[3]

---

1. Tucker cannot hear or speak.

2. SDCL 32–23–10 provides:

   Any person who operates any vehicle in this state is considered to have given his consent to the withdrawal of blood or other bodily substance and chemical analysis of his blood, breath or other bodily substance to determine the amount of alcohol in his blood and to determine the presence of marijuana or any controlled drug or substance.
   The person shall be requested by the officer to submit to the withdrawal of blood or other bodily substance for chemical analysis or chemical analysis of his breath and shall be advised by the officer that:
   (1) If he refuses to submit to the withdrawal or chemical analysis, no withdrawal or chemical analysis may be required unless he has been arrested for a third, fourth or subsequent violation of § 32–23–1, constituting a felony offense under § 32–23–4 or 32–23–4.6;
   (2) If he refuses to submit to the withdrawal or chemical analysis, his driver's license shall be revoked for one year, unless pursuant to § 32–23–11.1 he pleads guilty to a violation of § 32–23–1 prior to a revocation order being issued; and

   (3) He has the right to have a chemical analysis performed by a technician of his own choosing at his own expense, in addition to the test requested by the officer.

3. SDCL 32–23–7 provides:

   In any criminal prosecution for a violation of § 32–23–1 relating to driving a vehicle while under the influence of intoxicating liquor, or a violation of § 22–16–41, the amount of alcohol in the defendant's blood at the time alleged as shown by chemical analysis of the defendant's blood, breath, or other bodily substance shall give rise to the following presumptions:
   (1) If there was at that time five hundredths percent or less by weight of alcohol in the defendant's blood, it shall be presumed that the defendant was not under the influence of intoxicating liquor;
   (2) If there was at that time in excess of five hundredths percent but less than ten hundredths percent by weight of alcohol in the defendant's blood, such fact shall not give rise to any presumption that the defendant was or was not under the influence of intoxicating liquor, but such fact may be considered with other competent evidence in determining the guilt or innocence of the defendant;

Tucker's jury trial began on January 19, 1994. Tucker's blood test results were admitted during the course of the trial and the jury ultimately returned verdicts finding Tucker guilty of two counts of vehicular homicide and one count of driving under the influence of alcohol.[4] A judgment of conviction was filed on May 2, 1994. On May 5, Tucker filed a post-trial motion for a new trial. Tucker's motion again asserted that his blood test results were erroneously admitted during trial because of the arresting officer's noncompliance with the implied consent law. The new trial motion was denied in an order entered June 20, 1994. Tucker appeals.

## ISSUE

DID THE TRIAL COURT ERR IN ADMITTING TUCKER'S BLOOD TEST RESULTS INTO EVIDENCE?

[B]odily substance samples [are] not subject to the exclusionary rule under the Fourth Amendment if they are taken (1) incident to a lawful arrest, (2) by a reliable and accepted method of obtaining such sample, (3) in a reasonable, medically approved manner, and (4) where there is probable cause to believe that the evidence sought exists. It also held that the elimination of alcohol by natural bodily functions presents exigent circumstances which obviate the necessity of obtaining a search warrant.

*State v. Hartman*, 256 N.W.2d 131, 134 (S.D. 1977) (footnotes omitted) *citing Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966).

Despite inapplicability of the exclusionary rule to bodily substance samples, the legislature enacted the implied consent statutes to, "extend to the operators of motor vehicles a right beyond those embodied within the Fourth Amendment or Art. VI, § 11, South Dakota Constitution, i.e., the right to refuse to submit to a chemical test of

their bodily substances for a determination of blood alcohol content." *Hartman*, 256 N.W.2d at 135. Nevertheless, the legislature continued to encourage drivers to submit to chemical tests by requiring them to forfeit their driving privileges by exercising their right of refusal. *See* SDCL 32–23–10(2); SDCL 32–23–11.

*State v. Parker*, 444 N.W.2d 42, 44 (S.D. 1989).

The implied consent law is primarily set forth in SDCL 32–23–10. The statute requires a law enforcement officer arresting a person for DUI to inform that person of his right to refuse chemical analysis of his bodily substances, the consequences of a refusal, and his right to have an analysis performed by a technician of his own choosing at his own expense, in addition to the required test. SDCL 32–23–10. *See also, Parker, supra*. The issue in this case addresses the failure of a law enforcement officer to give these required warnings and the penalty for that failure.

In *Hartman*, this Court recognized that, "the implied consent statutes within themselves provide a sufficient deterrent to violation of the implied consent statutes by police officers without excluding this highly probative evidence." *Hartman*, 256 N.W.2d at 135 (footnote omitted). "This deterrent exists in (1) state's loss of the right to revoke the driver's license of anyone refusing chemical analysis without knowledge of the implied consent statutes and (2) state's forfeiture of the benefit of the statutory presumptions of SDCL 32–23–7." *Parker*, 444 N.W.2d at 44. *Hartman, supra*, was reaffirmed by this Court in *State v. Big Head*, 363 N.W.2d 556 (S.D.1985), a vehicular homicide case where the arresting officer failed to inform the defendant of his right to refuse to take a blood test and the blood test results were subsequently admitted as evidence during trial. Noting that the trial court did not instruct

---

(3) If there was at that time ten hundredths percent or more by weight of alcohol in the defendant's blood, it shall be presumed that the defendant was under the influence of intoxicating liquor.

Percent by weight of alcohol in the blood shall be based upon milligrams of alcohol per 1.0

cubic centimeters of whole blood or 2100 cubic centimeters of deep lung breath.

4. Tucker entered a guilty plea to the charge of driving with a suspended license prior to trial.

the jury on the statutory presumptions in SDCL 32–23–7 and this Court's holding in *Hartman* that this, in conjunction with state's loss of the right to revoke the defendant's driver's license, provides a sufficient deterrent to law enforcement noncompliance with the implied consent law, this Court found no error by the trial court in its admission of the blood test results and affirmed Big Head's conviction.

■ In this instance, state concedes that Tucker was never advised of the implied consent warnings prior to the withdrawal of his blood for testing. As a result, Tucker sought to have his blood test results excluded as evidence during trial. Rather than excluding this evidence, however, the trial court followed the sanctions this Court approved in *Hartman, supra,* and *Big Head, supra,* by requiring state to forfeit the benefit of the statutory presumptions in SDCL 32–23–7. Tucker argues this ruling was in error by relying on an exception to the *Hartman* sanctions suggested by *Hartman* itself:

> A prosecution under SDCL 32–23–1(1) which makes it a misdemeanor to drive with "0.10 per cent or more by weight of alcohol in his blood" would not be subject to the same deterrent effect, and the exclusionary rule may be needed in prosecutions for violations of subsection (1) if the implied consent statutes have not been complied with.

*Hartman,* 256 N.W.2d at 135, n. 12. Tucker contends that, since he was charged with a violation of SDCL 32–23–1(1), the trial court should have followed the above passage from *Hartman* and suppressed the blood test result evidence.

■ In support of his contentions, Tucker cites *Parker, supra.* In *Parker,* the defendant was arrested for a DUI. At the time of the arrest, the arresting officer failed to read the defendant the implied consent warnings. The defendant was subsequently charged with one count of driving or physical control of a vehicle while under the influence of alcohol (SDCL 32–23–1(2)) and an alternative count of driving or physical control of a vehicle while having 0.10 percent or more by weight of alcohol in his blood (SDCL 32–23–1(1)). Prior to trial, the defendant moved to

suppress his blood test results and he subsequently renewed his motion during trial. Both motions were denied. The defendant also objected to a jury instruction on the statutory presumptions contained in SDCL 32–23–7. The objection was overruled and the instruction was given. The defendant was found guilty of one count of driving or control of a vehicle while under the influence of alcohol (SDCL 32–23–1(2)) and appealed. This Court reversed, holding:

> [S]ince [the defendant] was *charged* with violation of SDCL 32–23–1(1) (driving or control of a vehicle while having 0.10 percent or more of alcohol in the blood) we hold that it was reversible error for the trial court to admit [the defendant's] blood test results into evidence. We further hold that it was reversible error for the trial court to give jury instruction no. 17 on the statutory presumptions of SDCL 32–23–7.

*Parker,* 444 N.W.2d at 45 (emphasis added).

Tucker bases his case for reversal on the above language from *Parker.* He contends that, like the defendant in *Parker,* he was *charged* with a violation of SDCL 32–23–1(1) and, despite that fact, the trial court admitted his blood test results into evidence. There is a key distinction between this case and *Parker,* however. In *Parker,* the charge of driving or physical control of a vehicle while having 0.10 percent or more by weight of alcohol in the blood (SDCL 32–23–1(1)) was actually submitted to the jury. Given the issue raised by the charge, state's benefit from the admission of the blood test result (0.25 percent) was obvious. Moreover, the trial court also gave the jury an instruction on the statutory presumptions contained in SDCL 32–23–7. In this instance, the *charge* of violating SDCL 32–23–1(1) was dismissed on the prosecutor's motion prior to trial and no instruction on the statutory presumptions in SDCL 32–23–7 was given. As a result, Tucker's intoxication had to be proven by the testimony of a properly qualified expert, not by a statutory presumption. *See, Hartman, supra; Big Head, supra.* Thus, state gained no benefit and suffered the very sanction this Court contemplated and has deemed suffi-

cient for its noncompliance with the implied consent law. *Id.*

Affirmed.

SABERS, AMUNDSON, KONENKAMP and GILBERTSON, JJ., concur.

MILLER, C.J., disqualified.